UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYESHON KING | Criminal No. 3:17CR149 (JBA)<br><br>August 22, 2018 |

**RULING ON MOTIONS TO SUPPRESS**

Defendant Tyeshon King is charged with one count of unlawful possession of a firearm and ammunition by a prohibited person in violation of 18 USC § 922(g)(1). Mr. King moves to suppress all evidence seized at 180 Houston Avenue, Bridgeport, CT, pursuant to the warrant of March 23, 2017, and any data retrieved from cell phones searched pursuant to the warrant of May 21, 2018. For the following reasons, Mr. King's motions are denied.

I. **Background**

On March 23, 2017, the government applied for and was granted a warrant to search 180 Houston Avenue, Bridgeport, CT, ("180 Houston") as part of an ongoing investigation into a drug trafficking organization operating in the area. (Ex. A (Warrant) to Def.'s Mot. to Suppress [Doc. # 54] at 1, 3-4.) Defendant Tyeshon King was not the subject of that warrant; instead, the government sought evidence related to the activities of Defendant King's twin brother, Tyevhon King. (*Id.* at 4.)

Special Agent Meghan B. King of the Federal Bureau of Investigation submitted an affidavit in support of that warrant application. (Ex. B (Aff. Supp. Warrant App.) to Def.'s Mot. to Suppress [Doc. # 54].) Special Agent King detailed her qualifications and experience, which includes participating in numerous criminal investigations into suspected narcotics trafficking,

coordinating controlled purchases of narcotics using confidential informants, and leading investigations into complex narcotics trafficking organizations. (*Id.* ¶ 2.) She explained that she is familiar with all aspects of this investigation and that she did not include in the affidavit every fact known to her concerning the investigation. (*Id.* ¶¶ 7-8.)

Special Agent King provided background information about the ongoing investigation into the drug trafficking organization of which Tyevhon King was reportedly a member, (*Id.* ¶¶ 3, 9), including information about several earlier seizures of cash, heroin, and heroin packaging materials linked to that organization. (*Id.* ¶¶ 11-13.)

During that investigation, the FBI developed a relationship with a confidential informant who agreed to work with the FBI in exchange for consideration at sentencing on pending narcotics charges and who was "capable of purchasing substantial quantities of heroin at the FBI's direction." (*Id.* ¶ 15.) Between September 2016 and January 2017, that confidential informant conducted "approximately a half-dozen controlled purchases," all of which were "negotiated with and at" Tyevhon King's direction and during "most" of which Tyevhon "personally delivered the heroin." (*Id.* ¶¶ 16-20.) "[A]t least one" of those purchases occurred in part at 180 Houston, where the confidential informant met and briefly conversed with Tyevhon King, who directed the confidential informant to an alternate location to acquire the heroin and whom the confidential informant paid in prerecorded funds upon his return to 180 Houston. (*Id.* ¶ 24). Special Agent King explained that that multi-stage sale method "provides an exemplar of how [Tyevhon King] structures heroin deals," and that, in her training and expertise, such a method is used to provide an "increased measure of operational security." (*Id.* ¶ 25.)

Special Agent King also attested that Tyevhon King was "known to reside" at 180 Houston, though she did not provide detail as to the specific source of her knowledge. (*Id.* ¶ 22.) Finally,

2

Special Agent King noted that Tyevhon King was indicted on March 16, 2017, by a federal Grand Jury on charges of conspiracy to possess with intent to distribute one kilogram or more of heroin, and that an arrest warrant had been issued. (*Id.* ¶ 5.)

On March 24, 2017, that search warrant was executed at 180 Houston by members of the FBI Safe Streets Violent Crime Task Force, assisted by the Bridgeport Police Tactical Narcotics Team and the Connecticut State Police Gang Unit and Narcotics Unit. (Ex. C (Investigation Report) to Def.'s Mot. to Suppress [Doc. # 54] at 1.) During that search, Tyeshon King, the sole defendant in this case, was found by officers in the basement of the residence at 180 Houston in a room which had been converted into a bedroom. (*Id.*) At that time, he was patted down for weapons and taken upstairs while officers searched the residence. (*Id.*) Evidence seized from the basement of the residence during that search includes two firearms, ammunition, one digital scale, and plastic bags. (*Id.*) Defendant moves to suppress all fruits of the March 24, 2017, search as a violation of his rights under the Fourth Amendment to the United States Constitution [Doc. # 38].

Several mobile telephones were also seized during the pat-downs of Defendant King and his brother Tyevhon and the search of the residence. Those telephones were "comingled" by officers at the scene, and it is unclear from whom and exactly where in the residence each phone was seized. (Govt.'s Opp. to Def.'s Mot. [Doc. # 56] at 28.) Although the warrant of March 23, 2017, permitted seizure of "mobile telephones" and a variety of information stored on those telephones (Ex. A at 5), the government obtained a supplemental warrant authorizing forensic examination of those telephones "out of an abundance of caution." (Govt.'s Opp. at 29.) That supplemental warrant was requested and issued on May 21, 2018. (Ex. D (Warrant) to Def.'s Mot. to Suppress [Doc. # 54] at 1, 5). Although the government has represented that it does not intend to use any material derived from Mr. King's mobile telephone in its case-in-chief (Govt.'s Opp. at 29), Mr.

3

King has moved to suppress any evidence recovered in the search authorized by the warrant of May 21, 2018, as stale and in violation of his rights under the Fourth Amendment to the United States Constitution. [Doc. # 52.]

## II. Discussion

### A. Search of 180 Houston Avenue

Defendant contends that the search conducted pursuant to the March 23, 2017, warrant violated his Fourth Amendment rights because the affidavit supporting the government's warrant application did not support a finding of probable cause and because the good faith exception to the valid warrant requirement does not apply here. He therefore argues that all evidence seized from the house at 180 Houston Avenue pursuant to that warrant must be suppressed. (Def.'s Mem. Supp. Mot. to Suppress [Doc # 39].)

#### 1. Defendant's Expectation of Privacy

The government contends that Defendant King lacks standing[1] to challenge the search of 180 Houston because he did not submit a "properly sworn affidavit specifically articulating his privacy interest in" the searched area, and that his motion should therefore be "deemed unripe" until it is supported by such an affidavit. (Govt.'s Opp. at 9.)

The Fourth Amendment protects only those persons with a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 140 (1978). It is well established that

---

[1] The Supreme Court has rejected the use of a preliminary Fourth Amendment "standing" analysis in favor of substantive analysis of whether a defendant's rights under the Fourth Amendment were implicated. *See Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998); *Rakas v. Illinois*, 439 U.S. 128, 139–140 (1978). The Court analyzes the government's standing argument under the substantive "reasonable expectation of privacy" framework which effectively replaced the Fourth Amendment "standing" doctrine. *Id.*

4

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, only those who were entitled to Fourth Amendment protections in the searched area – i.e., those who had a legitimate expectation of privacy in the area – may seek exclusion of evidence seized there. *See Rakas*, 439 U.S. at 134. An individual is entitled to the strongest Fourth Amendment protections in his own home, where his legitimate expectation of privacy is strongest. *See Silverman v. United States*, 365 U.S. 505, 511 (1961). Like an actual resident, "an overnight guest in a home may claim the protection of the Fourth Amendment," but "one who is merely present with the consent of the householder may not" claim such protections because he lacks an objectively reasonable expectation of privacy in that house. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Defendant bears the burden of demonstrating that he had a reasonable expectation of privacy in the area searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

At issue here are both the reasonableness of Defendant King's expectation of privacy in 180 Houston Avenue, turning on the nature of his presence there at the time of the search, and how he may meet his burden of demonstrating that reasonable expectation of privacy.

In his Memorandum in Support of his Motion to Suppress [Doc. # 39], Defendant's counsel asserts that Defendant King had "slept [at 180 Houston] the night before" and was therefore entitled to Fourth Amendment protections in that home as an overnight guest. (Def.'s Mem. at 7.) A form titled "Investigation Report Narcotics Division," which details the search of 180 Houston, (Ex. C to Def.'s Mot. to Suppress [Doc. # 54]), notes that "[i]t was later reported by the owner of this residence a Benny Garrett who stated Tyeshon King lives in the room in the basement and pays him $200.00 a month for rent." (*Id.* at 1.)

5

In contrast, the government asserts its understanding that Defendant King intends to "put the government to its proof" by requiring the government to establish at trial that his presence at 180 Houston at the time of the search was "anything other than an incidental visitation." (Govt.'s Opp. at 9.) However, the government also asserts its belief "that Tyeshon King rented the basement at 180 Houston beginning at least as early as December 2016. And that as the paying tenant, he exercised dominion and control over its contents . . . ." (*Id.*) Despite that belief, the government argues that, because Defendant's "connection to the search premises has been made a material issue in dispute," (*id.*), he must first "submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search" in order to sufficiently demonstrate his required reasonable expectation of privacy in the searched premises. (*Id.* (citing *United States v. Ruggerio*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993)).)

If Defendant was either a paying tenant or an overnight guest at 180 Houston, his expectation of privacy in that area was reasonable, and he therefore does have "standing" to challenge the search of that location. *See Minnesota v. Olson*, 495 U.S. 91, 99-100 (1990). However, if Defendant's presence at 180 Houston was merely an "incidental visitation," then he was entitled to no such expectation of privacy. *See Carter*, 525 U.S. at 90.

The question, then, is whether Defendant King has met his burden to show that he did have a reasonable expectation of privacy at 180 Houston – i.e., that he was either an overnight guest or a paying tenant. Defendant's counsel's claim that Defendant King "slept there the night before" (Def.'s Mem. at 7) is not competent to support Defendant's claim of a reasonable expectation of privacy, because facts proclaimed solely in an attorney's memorandum are "not evidence at all." *Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003). That leaves the "Investigation

Report," filed by Mr. King as an exhibit to his motions, which represents that the owner of 180 Houston said that Mr. King lives in the basement and pays rent, as the evidence from which the Court could conclude that he does have standing to challenge the search.

Contrary to the government's suggestion, a sworn affidavit is not the only possible means by which Defendant may assert his expectation of privacy. *See, e.g., Rawlings*, 448 U.S. at 105 (citing witness testimony as a source for conclusion regarding reasonableness of the defendant's expectation of privacy); *United States v. Burke*, 718 F. Supp. 1130, 1135 (S.D.N.Y. 1989) (citing allegations in an indictment as support for conclusion that defendant did have an expectation of privacy in the searched premises). *See also United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (noting that defendant bears the burden of demonstrating an expectation of privacy but not specifying any particular method by which defendant must meet his burden). Though Mr. King's standing could undoubtedly be made clearer through submission of a sworn affidavit, Mr. King has placed evidence in the record from which the Court may conclude that Defendant was a paying tenant at 180 Houston Avenue and therefore did have a reasonable expectation of privacy there.

Moreover, the government's own position is that Defendant King was a "paying tenant" at 180 Houston who "exercised dominion and control over its contents" – a position which would certainly grant him an expectation of privacy in that area. In fact, the government's theory of the case appears to be based in part upon Defendant residing at 180 Houston, as the contraband he is charged with possessing was found not on his person but "within the basement bedroom belonging to Tyeshon King." (Ex. C at 1.)

Because the Court finds that Defendant has met his burden of demonstrating a reasonable expectation of privacy in the searched premises at 180 Houston Avenue, the Court proceeds to consider the substance of Defendant's Fourth Amendment claims.

## 2. Sufficiency of the Warrant Affidavit

The Fourth Amendment recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing . . . reasonableness generally requires the obtaining of a judicial warrant" which must be issued only upon a "showing of probable cause." *Veronia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (citing *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619 (1989)). To issue a warrant to search a residence, a judicial officer must find probable cause both that a crime was committed and that evidence of such crime is located at that residence. *See United States v. Harris*, 403 U.S. 573, 584 (1971) ("the issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises").

A judicial finding of probable cause is "entitled to substantial deference," especially "in close cases where doubts should be resolved in favor of upholding the warrant." *United States v. Travisano*, 724 F.2d 341, 345 (1983) (internal citations omitted). A reviewing court should consider only whether the "'totality of the circumstances' afforded the magistrate 'a substantial basis' for" his finding of probable cause. *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Defendant King contends that Special Agent King's affidavit did not support a finding of probable cause, even in light of that deference owed to Magistrate Judge Garfinkel's finding. He argues that the affidavit failed to allege a sufficient nexus between his brother Tyevhon King and 180 Houston Avenue, and between criminal activity and 180 Houston Avenue. (Def.'s Mem. at 7-8). Defendant also argues that the confidential informant, on whom Special Agent King's

8

affidavit relies heavily, is of unknown veracity. (*Id.* at 9-10). Finally, Defendant argues that the warrant was stale because the alleged criminal acts described in Special Agent King's affidavit occurred between two and six months prior to the warrant application. (*Id.* at 10-11).

Among the "totality of the circumstances" which must be considered in reviewing the issuance of a warrant, three factors are particularly relevant here. First, the experience and opinion of the requesting agent is "an important factor to be considered by the judge reviewing a warrant application." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (relying in part on a DEA agent's affidavit explaining that, in his experience, "major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities.") In *United States v. Young*, the Second Circuit upheld a finding of probable cause based in part on an agent's observation in his affidavit which "invoke[ed] his 23 years of experience" and reported that it is "common for narcotics dealers to keep records and other evidence of their business in their homes." 745 F.2d 733, 758 (2d Cir. 1984).

In her affidavit, Special Agent King detailed her experience investigating narcotics organizations and explained that, based on her training and experience, the "bi-furcated method of sale" employed by Tyevhon King in his interaction with the government's confidential informant "provides an exemplar of how [Tyevhon] structures heroin deals" in order to maintain "an increased measure of operational security" by separating himself from his "stash location." (Ex. B ¶¶ 25-26). Special Agent King also opined that, because Tyevhon had used 180 Houston Avenue "in furtherance of his drug trafficking activity," she believed that 180 Houston Avenue likely housed evidence of his criminal activities. (*Id.* ¶ 26). Like the judicial officers considering warrant applications in *Fama* and *Young*, Magistrate Judge Garfinkel was entitled to give weight to Special Agent King's experience and opinion.

Second, courts have found that an indictment alone provides substantial support for a finding of probable cause to search the indicted person's residence. *See, e.g., United States v. Mouzon*, 2016 WL 7188150 at *4 (S.D.N.Y. Nov. 28, 2016). Here, Tyevhon King had been indicted only two weeks earlier on a charge of conspiracy to possess with intent to distribute one kilogram or more of heroin. (*Id.* ¶ 5). Though the affidavit did not specify the source of this knowledge, Special Agent King did note that Tyevhon was "known to reside" at 180 Houston Avenue. (*Id.* ¶ 22). Though not conclusive on its own, Magistrate Judge Garfinkel was entitled to consider that indictment in determining whether Special Agent King's affidavit supported a finding of probable cause.

Third, in analyzing information obtained from a confidential informant, courts should consider factors like the informant's "veracity, reliability, and basis of knowledge . . . and the extent to which an informant's statements . . . are independently corroborated." *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (internal quotations omitted). "An informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause." *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993).

Defendant King appropriately notes that a confidential informant cooperating in exchange for consideration at sentencing may have motive to provide unreliable information. (Def.'s Mem. at 9-10.) However, that informant's activities were monitored and corroborated through the use of "approximately a half-dozen controlled purchases," at least some of which involved the use of "prerecorded funds." (Ex. B ¶¶ 16, 24.) Because the confidential informant's activities were supervised in that manner, Defendant's arguments that the informant's information was uncorroborated and reliability was unestablished are unavailing.

10

Defendant King also argues that the information contained in Special Agent King's affidavit was too stale to support a finding of probable cause. (Def.'s Mem. at 10-11.) It is true that "a present search must be based on current probable cause and not on facts existing in the past, unless, of course, there is reason to believe that those facts are still in existence." *United States v. Beltempo*, 675 F.2d 472, 477 (2d Cir. 1982). However, where there is a "pattern of continuing criminal activity" which gives "reason to believe that the cited activity was probably not a one-time occurrence," then "facts of past criminal activity" which might otherwise be "too stale" can still be sufficient to support a finding of probable cause. *Wagner*, 989 F.2d at 73. Ongoing "narcotics conspiracies," like the conspiracy alleged in Special Agent King's affidavit, "are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990)

Special Agent King indicated that the purchase of heroin by the confidential informant which took place in part at 180 Houston Avenue occurred between September 2016 and January 2017. (Ex. B ¶¶ 16, 24). Magistrate Judge Garfinkel issued the warrant to search 180 Houston Avenue on March 23, 2017. (Ex. A at 1.) The information relating specifically to 180 Houston was therefore between approximately two and six months old at the time the warrant was issued.

In her affidavit, Special Agent King expressed that Tyevhon King's activities are part of a larger organization with ongoing operations which had been under investigation for nearly two years at the time of her affidavit. (*Id.* ¶ 9.) In cases involving ongoing narcotics conspiracies of the type described in Special Agent King's affidavit, the Second Circuit has upheld delays of much longer than the delay at issue here. *See, e.g., Rowell*, 903 F.2d at 903 (upholding a delay of approximately 18 months and citing the "continuous nature of narcotics conspiracies"). Given the

11

ongoing nature of the activities at issue, the evidence contained in Special Agent King's affidavit was not too stale to support a finding of probable cause.

In consideration of the deference owed to Magistrate Judge Garfinkel's finding of probable cause and the totality of the circumstances, including Special Agent King's experience and the several controlled purchases, one of which occurred in part at 180 Houston Avenue, the Court finds that the warrant of March 23, 2017, was sufficiently supported by probable cause.[2]

**B. Search of Cell Phone Data**

Mr. King also contends that the May 21, 2018, warrant to search the cell phones seized at 180 Houston was a violation of his Fourth Amendment rights because the government held the cell phones for too long before seeking to recover data from them. (Def.'s Mem. Supp. Mot. to Suppress [Doc. # 53] at 3).

Defendant King notes that "a seizure that is lawful at its inception can violate the Fourth Amendment" if it becomes "prolonged beyond the time reasonably required" to achieve its purpose. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Mr. King cites cases which suggest that a roadside stop to issue a ticket may become unlawful if prolonged, *id.*, that a seizure of luggage to conduct a dog sniff test may be come unlawful if unreasonably long, *United States v. Jacobsen*, 466 U.S. 109, 125 n.25 (1984), and that a warrantless seizure initially supported by probable cause may become unconstitutional if the police unreasonably delay in securing a warrant, *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998).

---

[2] Because the Court finds that the March 23, 2017, warrant was sufficiently supported by probable cause, it declines to address the applicability of the "good faith exception" to the warrant requirement and Defendant's contentions regarding Special Agent King's candor. (Def.'s Mem. at 12-13.)

12

Defendant relies heavily on cases which suggest that that an initially lawful – but warrantless – seizure may at some point become unconstitutional if unreasonably prolonged. Here, however, the cell phones at issue were seized pursuant to the valid warrant of March 23, 2017. (Ex. A at 5-6) (authorizing seizure of "electronic devices" and a variety of "stored information" on those devices.) With regard to seizures initially authorized by warrant, the Fourth Amendment imposes no "time limitation on the government's forensic examination of the evidence seized." *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31 (D. Conn. 2002) (finding that a delay in analyzing computer evidence did not render the warrant stale given that the technological evidence was "frozen in time" and therefore there was no risk that probable cause had dissipated at the time of the analysis).

Given that the cell phones were initially seized pursuant to a valid warrant, the government's delay in reviewing their contents was not a violation of Defendant's Fourth Amendment rights.

### III. Conclusion

For the foregoing reasons, Mr. King's Motions to Suppress [Doc. # 38, 52] are DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22d day of August 2018.